Argued May 7, reversed and remanded with instructions
October 14, 1970

MEIER, *Respondent, v.* BRAY, *Defendant,*
FARRIER, *Appellant.*

475 P2d 587

614

*George M. Joseph*, Portland, argued the cause for appellant. With him on the brief were Morrison & Bailey and Garr M. King, Portland.

*David C. Landis*, Portland, argued the cause for respondent. On the brief was John Gordon Gearin, Portland.

Before McALLISTER, Presiding Justice, and SLOAN,* O'CONNELL, DENECKE, HOLMAN** and HOWELL, Justices.

DENECKE, J.

The plaintiff administratrix secured a verdict of $7,000 as damages for wrongful death. The decedent left no surviving spouse or dependents; therefore, the measure of damages was what decedent would have retained as savings during the remainder of his life. *Carlson v. Oregon Short Line Ry. Co.*, 21 Or 450, 28 P 497 (1892). The issue in the trial court was whether or not the amount of such savings should be reduced to its present value. The trial court held the

---

* Sloan, J., resigned September 30, 1970.
** Holman, J., did not participate in this decision.

amount should not be so reduced, and the defendant Farrier appeals.

ORS 30.020 provides:

"When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the decedent, * * * for the benefit of the estate of the decedent, may maintain an action against the wrongdoer * * *. [I]n every such action such damages may be awarded as, in all the circumstances of the case, may be just, and will reasonably and fairly compensate the * * * estate for the actual pecuniary loss, if any, to such spouse, dependents or estate * * *."

The defendant Farrier requested an instruction which in essence instructed that after fixing the amount of the savings the decedent would have had at the end of his life, if he had not been killed, the jury should determine the present value of such savings. The instruction stated a formula to make this determination which consisted of discounting the amount of savings by a percentage, which was the interest the jury decided the savings would earn, multiplied by the number of years of life expectancy.

The plaintiff objected to any instruction that savings were to be reduced to present value. The trial court was in doubt and wanted more time for counsel and the court to research the question. For this reason counsel for all parties stipulated that the instruction would not be given and after the verdict was returned the trial court could determine whether or not the verdict should be reduced to present value, and if it decided that it should, the court could make the reduction.

About a month after the verdict was returned the trial court made findings and conclusions. It found

that a reasonably prudent investor could expect to receive a 4 per cent return over the period of the decedent's life expectancy, 16 years, and based upon present value tables the present value of $7,000 is $3,737.30. The trial court concluded, however, that under ORS 30.020, above quoted, the amount of savings the decedent could be expected to leave at the end of his natural life could not be reduced to its present value. Judgment was entered, therefore, for $7,000.

Plaintiff contends on appeal that the question of whether the verdict should be reduced is not properly before the court because the instructions given are not in the record on appeal and if the trial court gave either Uniform Jury Instruction 31.02 or read ORS 30.020, above quoted, the jury was instructed to return a verdict in the amount of the "actual pecuniary loss" to the estate. Such an instruction, plaintiff contends, in effect instructs the jury to reduce the loss to present value. Since, according to plaintiff, we must assume that the jury followed the instruction, it follows that the verdict already represents present value.

Plaintiff's contention would be persuasive if it were not for the stipulation of the parties. The stipulation is contained in statements by the trial court.

While hearing argument whether the loss should be reduced to its present value, and before instructing the jury, the trial court stated:

"What is wrong with treating it as a matter of law as we sometimes do with pro tanto satisfactions and considering it post verdict as a matter of law before you enter the judgment?

"* * * * *

"And then I can take—if assuming that you would have a judgment in some amount, would you have any objection, Mr. Lindstedt [plaintiff's

counsel at trial], then for my proceeding on the basis of taking evidence and making a determination as a matter of law whether or not there would be a reduction at that time? Not that you are bound by it. I don't mean that."

The parties so agreed.

After the jury had been instructed the court stated:

"I understood from what we discussed earlier that Mr. Lindstedt of course does not agree in any event it would be proper to discuss the matter; but that he has no objection if I am of the mind that it's proper as a matter of law for me to consider it as an amount as a question really as a remitter to be determined post-verdict."

The parties agreed narrative statement recites:

"*  *  * By stipulation of the parties, the court did not so instruct the jury prior to deliberations, but reserved the right to reduce any verdict returned to its present value post verdict.  *  *  *."

The narrative states that one of "[t]he questions before the court on this appeal [is]: 1. Whether pecuniary loss should be reduced to present value in Oregon in an action for wrongful death brought for the benefit of the decedent's estate." (The other question is not material on this issue.)

■ We interpret the parties' intention to be that the defendant Farrier's requested instruction on present value would not be given and after the verdict was returned the trial court would decide whether the loss to the estate should be reduced to its present value, and if it should, the trial court would so reduce it. These intentions were reaffirmed after the instructions.

We conclude, therefore, that the question of

whether the verdict should be reduced to present value is properly before this court.

■ The plaintiff no longer contends, if the question is properly before this court, that the damages for wrongful death should not be reduced to present value. We hold that the damages should be so reduced. While this court has never ruled expressly on the issue in question, we have approved instructions in wrongful death cases involving a widow or a widow and children which stated that the loss to beneficiaries should be reduced to its present value. *Nordlund v. Lewis & Clark Ry. Co.*, 141 Or 83, 92, 15 P2d 980 (1932); *Prauss v. Adamski*, 195 Or 1, 22, 244 P2d 598 (1952).

The general law in all jurisdictions in the United States is that damages for wrongful death must be reduced to their present value. "In the United States, however, though of comparatively recent origin, the rule is generally recognized that the trial court must, or with propriety may, instruct the jury in an action for wrongful death to limit the amount of recovery in respect of the loss of future pecuniary benefit to its present worth or cash value." Annotations, 77 ALR 1439, 1441 (1932), 154 ALR 796, 797 (1945). Accord, McCormick, Damages, 309, § 96 (1935); Speiser, Recovery for Wrongful Death, ch 8 (1966).[1]

The reason for the rule was stated most authoritatively in *Ches. & Ohio Ry. v. Kelly*, 241 US 485, 36 S Ct 630, 60 L Ed 1117 (1916), a wrongful death action brought under the Federal Employers' Liability Act:

"* * * So far as a verdict is based upon the

---

[1] *Beaulieu v. Elliott*, 434 P2d 665 (Alaska 1967), is to the contrary for reasons which we do not find persuasive.

deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future. * * *." 241 US at 489.

The other issue on appeal concerns the court's finding "that a reasonably prudent investor can expect to receive a 4 percent return per year * * *." There was no direct evidence to support this finding.

In their Agreed Narrative Statement the parties posed the question on this issue, "Whether the court may take judicial notice of the factors involved in computing present value of a pecuniary loss."

Part of the formula for reducing a future pecuniary loss to present value is the rate of interest or return which the amount of loss will earn. The determination of this rate is phrased: "* * * [W]hat interest could be fairly expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in that locality?" *Southern Pac. v. Klinge,* 65 F2d 85, 87 (10th Cir 1933).

Some courts have adopted the legal interest rate as the return a reasonably prudent investor could expect. Annotation, 105 ALR 234 (1936). We do not find this to be realistic. The legal rate in Oregon has for many years been 6 per cent. ORS 82.010. This rate of interest during some years has had little relation to the rate reasonably safe investments would earn.

The Washington court in *Kellerher v. Porter,* 29 Wash2d 650, 674-675, 189 P2d 223 (1948), considered the problem and likewise concluded the adoption of

the legal rate of interest for this purpose would not be satisfactory. The federal courts in Federal Employers' Liability Act cases do not use the legal rate of interest. Annotation, 105 ALR 234, 237 (1936).

■ We conclude that the most satisfactory method to determine the rate of interest to be used is to allow the trier of fact to make a finding of a reasonable rate on the basis of evidence introduced or from evidence which can be judicially noticed or from both. This appears to be the method used by some federal courts although such rationale is not clearly articulated. For example, *Southern Pac. Co. v. Guthrie*, 186 F2d 926 (9th Cir 1951).

■■ The trial court can take judicial notice of matters of common knowledge or general notoriety. ORS 41.410. This includes matters which, although not known by the court, are "Facts Capable of Certain Verification." McCormick, Evidence, 691, § 325 (1954). *State v. Schriber*, 185 Or 615, 627-628, 205 P2d 149 (1949). An example is taking judicial notice of a party's life expectancy by consulting standard mortality tables. *Shelton v. Lowell*, 196 Or 430, 450, 249 P2d 958 (1952). The current and past interest rates paid on government obligations, bank and savings and loan deposits are either facts known to the court or capable of certain verification, and, therefore, subject to judicial notice. Leasure, *How to Prove Reduction to Present Worth*, 21 Ohio L J 204, 212 (1960). McCormick, Evidence, 691-694, § 325 (1954):

> "* * * It is a matter of common and public knowledge that interest rates on investments that may be made with safety by a person of ordinary business ability are now, and for a number of years have been, less than in times past. * * *.

"We feel that under conditions as they existed at the time of the trial of this case, taking into account the general public knowledge of interest rates payable on government bonds, bank deposits, building and loan association deposits, insurance contracts, and other thoroughly safe investments, the jury would not have abused its discretion in using an interest rate as low as 3%. * * *." *Renuart Lumber Yards v. Levine*, 49 S2d 97, 98 (Fla 1950).

The question posed is answered in the affirmative. The trial court can take judicial notice of the factors involved in computing present value, such as the rate of interest on government obligations, and on bank and savings and loan deposits.

The cause is reversed and remanded with instructions to the trial court to enter judgment for $3,737.30.