Argued January 9, affirmed March 23, petition for
rehearing denied April 17, 1973

OSBORNE, *Appellant, v.* BESSONETTE,
*Respondent,* MEDFORD MOTORS, INC.,
*Respondent-Cross-Appellant.*
508 P2d 185

*Joel B. Reeder,* Medford, argued the cause and filed the briefs for appellant.

*Hugh B. Collins,* Medford, argued the cause for respondent Medford Motors. With him on the brief were Lyle C. Velure, and Collins, Redden, Ferris & Velure, Medford.

*Walter J. Cosgrave,* Portland, argued the cause for respondent Bessonette. With him on the brief were Cosgrave & Kester, Portland.

Before O'CONNELL, Chief Justice,[*] and DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

HOWELL, J.

Plaintiff, dissatisfied with the amount of a verdict in his favor in a personal injury action, appeals from a judgment of $15,000 general damages and $1,200 special damages.

A brief statement of the facts is necessary.

Plaintiff was a passenger in an auto being demonstrated to him by a salesman for defendant Medford Motors, Inc. The vehicle in which plaintiff was riding was traveling easterly in the curb lane on East Main Street, a four-lane street in Medford. East Main is intersected on the north by Hawthorne Street and on the south by Almond Street. The vehicle operated by defendant Bessonette was traveling westerly on East Main and was attempting to make a left turn across eastbound traffic onto Almond Street. The collision between the Bessonette vehicle and the Medford Motors vehicle occurred in the intersection in the eastbound curb lane of East Main Street.

---

[*] O'Connell, C.J., did not participate in this decision.

At the trial the defendant Bessonette admitted negligence and that such negligence contributed to the accident. The jury returned a verdict against both defendants.

■ Plaintiff's first assignment of error is that the court erred in denying his motion for a mistrial.

On direct examination plaintiff testified about his continuous work record and twice stated that he had never drawn unemployment benefits. On cross-examination of plaintiff by counsel for defendant Bessonette, the following occurred:

> "Now, you were asked this morning by your attorney if you ever received any unemployment compensation and you said no. I will ask you if it isn't a fact that you have been receiving benefits since this accident."

Counsel for plaintiff objected, and the question was withdrawn. Later, on recross-examination, counsel for defendant Bessonette asked the following question:

> "You were asked about benefits. As a matter of fact, you have been receiving benefits since this accident by reason of the fact that you're not employed?"

Plaintiff's objection to the question was sustained, but a motion for mistrial was denied. The attempted interrogation regarding other benefits since the accident was improper. However, plaintiff's objections were sustained in both instances. This court has stated many times that whether a mistrial should be granted is within the sound discretion of the trial court. We cannot say that the denial of the mistrial was an abuse of discretion.

The plaintiff's second assignment of error relates to the refusal of the trial court to allow an economist

and statistician to testify concerning the present value of future earnings which plaintiff would lose as a result of his injuries. The trial court refused plaintiff's offer of proof, apparently believing that the reduction to present value of a loss of future earnings or savings was restricted to wrongful death cases.

In *Meier v. Bray*, 256 Or 613, 475 P2d 587 (1970), we held that damages for wrongful death should be reduced to their present value and that the formula to be used, including the interest rate, was the subject of evidence or judicial notice, or both.

Whether the same rule should apply in cases other than wrongful death cases is a matter of first impression in this state. Other states and the text writers have almost universally held that an award for damages for loss or impairment of future earning capacity should be reduced to its present value.[1]

The rationale for the rule is stated in 22 Am Jur 2d 140, Damages § 96, as follows:

"When the plaintiff is compensated for a decrease in his future earning capacity, he is awarded

---

[1] *Accord*, Stewart v. Atlanta Gulf & Pacific Co., 9 F Supp 344 (DC SD Fla 1934); Russell v. City of Wildwood, 428 F2d 1176 (3rd Cir 1970); Florida Cent. and P.R. Co. v. Burney, 98 Ga 1, 26 SE 730 (1895); McCray v. Illinois Central Railroad Company, 12 Ill App 2d 425, 139 NE2d 817 (1957); Von Tersch v. Ahrendsen, 251 Iowa 115, 99 NW2d 287 (1959); Williams v. Clarke County, 143 Iowa 328, 120 NW 306 (1909); Rigley v. Pryor, 290 Mo 10, 233 SW 828 (1921); Lake v. Southwick, 188 Neb 533, 198 NW2d 319 (1972); Borcherding v. Eklund, 156 Neb 196, 55 NW2d 643 (1952); Daughtry v. Cline, 224 NC 381, 30 SE2d 322 (1944); Maus v. New York, Chicago & St. Louis Rd. Co., 165 Ohio St 281, 135 NE2d 253 (1956); McCaffery v. Schwartz, 285 Pa 561, 132 A 810 (1926); Wentz v. T. E. Connolly, Inc., 45 Wash 2d 127, 273 P2d 485 (1954). *See also,* McCormick, Damages 304, § 86 (1935); Restatement, Torts § 924 (d); 22 Am Jur 2d 140, Damages § 96; Annot., 77 ALR 1439; Annot., 154 ALR 796. *Contra,* Beaulieu v. Elliott, 434 P2d 665 (Alaska 1967).

a sum of money now for funds which—had it not been for the injury—he would have received at some future dates. His wages or salary would have been paid to him during the remainder of his work-life; the award compensating him for a decrease in his ability to earn wages or salary is paid to him in a lump sum and in advance of the date or dates on which he would normally have received the payments. Thus, if the court, for this element of damages, awards a sum of money equal to the total decrease in plaintiff's earning capacity without reduction to present worth, it is ignoring the fact that money has the power to earn money. Damages should therefore be reduced to reflect only the present value of the plaintiff's decreased earning capacity. * * *." (Footnotes omitted)

As an award for damages for loss of future earning capacity should be reduced to its present value, the proffered evidence in the instant case was admissible. A jury could hardly be expected to make such reduction without the benefit of advice concerning mortality tables, actuarial tables, and the interest rate. However, we do not believe that the rejection of the evidence in the case at bar constitutes reversible error. The lack of such evidence could not have been prejudicial to plaintiff because the evidence would have served as a basis for a reduction of the damages. Moreover, in his argument to the jury plaintiff's counsel advised the jury that any loss of future earnings must be discounted to present value. He discussed in detail the manner of discounting loss of future earnings to present value. His argument contained substantially the same information as the testimony of the economist-statistician in the offer of proof. No objection was made to plaintiff's argument, and we assume that plaintiff's counsel covered the subject to his satisfaction.

For his last assignment of error, plaintiff con-

tends that he was entitled to a directed verdict against defendant Bessonette because Bessonette had admitted liability. The court advised the jury in its instructions that Bessonette had admitted liability, but apparently a verdict form was submitted to the jury which would have allowed the jury to find in favor of Bessonette. However, the jury returned a verdict in favor of plaintiff and against both defendants, Bessonette and Medford Motors. As plaintiff was awarded a verdict by the jury, we find this assignment also without merit.

■ Defendant Medford Motors has filed a cross-appeal and assigns as error the failure of the trial court to grant a directed verdict in its favor. Medford Motors argues that the evidence showed the accident was caused by Bessonette when he made the left turn in front of oncoming traffic, and that evidence did not establish any negligence by the driver of the Medford Motors vehicle. Plaintiff's complaint against Medford Motors alleged excessive speed, failure to stop to avoid a collision, and failure to exercise proper control and keep a proper lookout. The trial court struck the second allegation, failure to stop.

We believe that a jury question was presented on the allegations of negligence against Medford Motors and that the motion for a directed verdict was properly denied. Bessonette testified that the light at the intersection was red when he stopped preparatory to making his left-hand turn at the intersection. When the light turned green, a driver in a pickup truck heading easterly on the opposite side of the intersection signaled Bessonette to proceed with his turn. As Bessonette started to turn, he saw the Medford Motors vehicle coming toward him 80 to 100 feet away at an estimated speed of 50 miles per hour. Bessonette stopped, and the accident occurred. The driver of the

Medford Motors car in which plaintiff was riding testi-
fied that he did not expect any approaching vehicle to
turn left at the intersection, although he saw that other
easterly traffic had stopped and the light was green.

Defendant Medford Motors relies on a statement
in the testimony of plaintiff that the driver of the
Medford Motors vehicle was not driving improperly
at the time of the accident. Defendant cites *Bockman v.
Mitchell Bros. Truck Lines,* 213 Or 88, 320 P2d 266, 69
ALR2d 152 (1958), as authority for the proposition
that a jury should not be allowed to find for a plaintiff
after first finding that plaintiff's testimony was false.
In the instant case, the plaintiff's statement conflicted
with the testimony of Bessonette and to some extent
conflicted with other testimony from the plaintiff. The
plaintiff also testified that immediately prior to the
accident he had been turned around looking at the back
interior portion of the car when his driver "hit the
brakes" and that he did not see the Bessonette car
until it was three feet away.

Considering all the evidence, the jury could have
concluded from the testimony that the driver of the
Medford Motors vehicle was driving at an excessive
speed and not maintaining a proper lookout or control.

■■ Defendant Medford Motors, in its cross-appeal,
also contends the trial court erred in allowing de-
fendant Bessonette to cross-examine plaintiff regard-
ing his testimony given in a deposition. At the time
the plaintiff's deposition was taken by Bessonette,
Medford Motors was not a party to the litigation, was
not represented at the deposition, and had no notice
of the taking of the deposition. Defendant Medford
Motors relies on ORS 45.250 which states, in part:

"45.250 Use of deposition. (1) At the trial or

upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any of the following provisions of this subsection:

"(a) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.

"* * * * * *"

As we have mentioned, plaintiff testified he was looking back at the rear portion of the car immediately before the collision. On cross-examination he denied that the driver was showing him the features of the car as they proceeded along Main Street. Defendant Bessonette then read from the deposition wherein the plaintiff stated that he and the driver were "talking" about the features of the car as they drove along. In another portion of the cross-examination, plaintiff testified that he "couldn't say" but he did not believe that cars in plaintiff's left-hand lane were stopped at the time the light at the intersection turned green. The defendant again read from the deposition wherein plaintiff had stated:

"They were stopped at the time we first saw them and then the light turned green and they still sat there."

The defendant Bessonette was not prevented from using the deposition as impeachment because Medford Motors was not a party to the litigation and had no notice of the taking of the deposition. Our statute ORS 45.250 is almost identical to Rule 32(a) and (a)(1) (formerly Rule 26(d) and (d)(1)) of the Federal Rules of Procedure relating to use of depositions. Professor Moore in his text on federal procedure states:

"A deposition may be used as substantive or

original evidence only against a party who was present or represented at the taking of the deposition or who had due notice thereof. *But a deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness, irrespective of whether parties other than the one taking the deposition were present or represented at the taking of the deposition or had due notice thereof.*" (Footnotes omitted). 4 Moore's Federal Practice (2d ed 1969) 1645-46, § 26.27. (Emphasis supplied)

In accord with the above rule is Wright and Miller, 8 Federal Practice and Procedure, § 2144, n. 35.

The use of the deposition was proper. Moreover, the plaintiff's admission that he and the driver had been talking about the features of the car is hardly important. The jury could have easily inferred that a prospective purchaser and a car salesman would talk about the car, whether or not that amounted to "showing" the features. Plaintiff's testimony was equivocal as to whether cars preceding him in the left-hand lane had stopped. We do not believe that the distinction between his testimony that he "couldn't say" and "didn't believe" they were stopped and testimony that they were stopped was so inconsistent as to be prejudicial to defendant Medford Motors, in any event.

The defendant Medford Motors' other assignment that the court erred in giving the entire instruction on the basic rule is without merit.

The judgment is in all respects affirmed.