Argued September 11, reversed and remanded for trial
September 26, 1974

JONES, *Appellant, v.* FLANNIGAN, *Respondent.*

526 P2d 543

*L. B. Sandblast,* Portland, argued the cause and filed a brief for appellant.

*Jeffrey M. Batchelor,* Portland, argued the cause for respondent. With him on the brief were Fred M. Aebi, and Gearin, Cheney, Landis, Aebi & Kelley, Portland.

Before O'Connell, Chief Justice, and McAllister, Holman, Tongue, Howell and Sloper, Justices.

HOLMAN, J.

Plaintiff brought this action for damages for the loss of services of a 13 year old son whom he claims was killed as the result of the negligent and/or intentional acts of the defendant, a schoolteacher, who was attempting to stop a fight between the deceased and another boy. Defendant filed an answer contending that plaintiff was collaterally estopped to bring such an action because plaintiff, as the administrator of his son's estate, had brought a previous action against defendant for damages to the estate, contending that defendant had negligently killed his son, which action had ended in a judgment for defendant pursuant to a directed verdict. Plaintiff filed no reply. Plaintiff appeals from a judgment for defendant upon the pleadings, holding that plaintiff was so estopped.

While there may be some question about the adequacy with which defendant pleaded the prior action, this question has been alleviated by a stipulation of the parties which allows this court to consider the pleadings and judgment in the prior action. The only issue raised by the plaintiff is whether the judgment in the prior action, which is admitted by plaintiff's failure to file a reply, estops him from asserting his claim against defendant in this action.

This action, not being upon the same claim or demand as that in the first action brought by plaintiff, raises a question of collateral estoppel and not one of *res judicata,* which usually refers to the rule preventing relitigation of the same cause of action.

*Gaul v. Tourtellotte,* 260 Or 14, 17, 488 P2d 416 (1971);
*Bahler v. Fletcher,* 257 Or 1, 4, 474 P2d 329 (1970).

■■ Collateral estoppel may be invoked against only someone who is a party, or in privity with a party, to the first action. Individuals in privity with named parties include those who control an action though not a party to it; those whose interests are represented by a party to the action; and successors in interest to those having derivative claims. *Gaul v. Tourtellotte,* supra, at 20; *Wolff v. Du Puis,* 233 Or 317, 322, 378 P2d 707 (1963); Restatement, Judgments 389, § 83, Comment *a* (1942). Plaintiff is in privity with his position in the first case, where he acted as administrator of his son's estate, because he was in control of the first action and, as an heir at law of his son, he had a personal interest in the outcome of the first case.

■ The doctrine of collateral estoppel grants finality only to material issues or determinative facts which were actually or necessarily adjudicated in the prior action. *Gaul v. Tourtellotte,* supra at 17; *Burnett v. Western Pac. Ins. Co.,* 255 Or 547, 556, 469 P2d 602 (1970); *State v. George,* 253 Or 458, 463, 455 P2d 609 (1969); *State of Oregon v. Dewey,* 206 Or 496, 504, 292 P2d 799 (1956).

■ Plaintiff apparently contends that in deciding problems of identity of the issues he is entitled to have considered the allegations of a proposed amended complaint which he tendered in this case. However, since the trial court denied plaintiff permission to file the proposed amended complaint and plaintiff has not assigned that ruling as error, he has not preserved the right to make such a contention on appeal.

We do not have the testimony or exhibits from the first case, nor does the judgment order in that case granting a directed verdict specify in what respect the plaintiff's proof was deficient. Therefore, our determination of whether the prior case necessarily decided an issue which is determinative of the present cause of action is based solely upon the pleadings and the nonspecific judgment order of the first case. The issues in the first case were:

1. Was defendant negligent;

2. If defendant was negligent, did such negligence cause plaintiff's son's death; and

3. If plaintiff was negligent and such negligence caused plaintiff's son's death, did plaintiff's estate suffer any damages thereby?

In the present action, plaintiff appears to contend that since he has alleged in a separate count that his son's injuries and death were caused by defendant's intentional conduct, the determinative issues in some way are different than in the first case, which only alleged acts of negligence. If the first case was decided because of lack of evidence of negligence, it is difficult to see how, in the context of breaking up a fight between two boys, an allegation of intentional acts makes any difference. Plaintiff does not allege defendant intended to kill or injure his son, only that his son died from defendant's intentional acts. The fact that the acts were intentional does not keep them from being negligent or add any significant dimension to the cause of action. If the basis for the directed verdict in the first case was lack of evidence of defendant's negligence arising out of the same occurrence, it would be dispositive of both the purported counts in the present case.

Likewise, if the directed verdict in the first case was based upon lack of evidence that defendant's acts caused the son's injuries and death, the disposition of that issue would be determinative of the identical issue which is necessary to a recovery in the present case.

Assuming that the determinative issue in the first case was one of damages, we must decide whether that determination would necessarily be dispositive of the issues of damages in this case.

■ This action was brought under ORS 30.010,[1] which was as follows:

> "A father, or in case of his death or desertion of his family, the mother, may maintain an action for the injury or death of a child."

The father's right of action under this section was limited to the value of the services of the child during his minority less the cost of rearing the child during the same period. *Escobedo v. Ward,* 255 Or 85, 96-99, 464 P2d 698 (1970).

■■ The first action was brought by plaintiff as administrator of his son's estate under ORS 30.020,[2] which stated:

> "When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the decedent, for the benefit of the surviving spouse and dependents and in case there is no surviving spouse or dependents, then for the benefit of the estate of the decedent, may maintain an action against the wrongdoer, if the decedent might have maintained an action, had he lived, against the wrongdoer for an injury done by

---

[1] Subsequently amended by Oregon Laws 1973, ch 718, Section 1.

[2] Subsequently amended by Oregon Laws 1973, ch 718, Section 2.

the same act or omission. Such action shall be commenced within three years after the occurrence of the injury causing the death of the decedent, and in every such action such damages may be awarded as, in all the circumstances of the case, may be just, and will reasonably and fairly compensate the spouse, dependents or estate for the actual pecuniary loss, if any, to such spouse, dependents or estate and for all reasonable expenses paid or incurred for funeral, burial, doctor, hospital or nursing services for the decedent."

There being no surviving spouse or dependents, the first action was brought for the damage to the estate. The measure of damages would have been what decedent would have earned and saved during his normal life expectancy. *Meier v. Bray,* 256 Or 613, 614, 475 P2d 587 (1970). The statute giving a right of action for damages to the estate begins to give relief where ORS 30.010, the statute giving a right of action for damages to the father during the child's minority, leaves off. *Thompson v. Union Fishermen's Co-op. P. Co.,* 118 Or 436, 449, 235 P 694, 246 P 733 (1926); *Schleiger v. Northern Terminal Co.,* 43 Or 4, 11, 72 P 324 (1903).

In the present case the measure of damages is entirely different than that in the first case and plaintiff would not have been foreclosed by a finding in the first case that the decedent would not have earned and saved anything during his normal life expectancy. The fact that he would not is in no way inconsistent with a finding in the present case that there was a value of his services to his father during his minority which was in excess of the cost of rearing him. The father was not only entitled to his son's earnings during his minority, but to the services the child would have rendered to his father during such period.

■ Because a finding of no evidence of damages in the first case would not be relevant to or determinative of the issue of damages in this case, and because we are unable to say that the first case was decided on some other issue which was determinative of the present case, the doctrine of collateral estoppel has no application.

The judgment of the trial court is reversed and the case is remanded for trial.