Argued October 5, 1977, affirmed February 28, petition for rehearing denied March 28, 1978

BARRETT, *Respondent,*
*v.*
LANDIS, *Appellant.*
(No. 7217, SC 24750)

575 P2d 154

Hugh B. Collins, Medford, argued the cause for appellant. With him on the briefs were Collins, Velure & Heysell and John L. Klor, Medford.

Walter D. Nunley, Medford, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, Tongue, Linde, Justices, and Gillette, Justice Pro Tempore.

DENECKE, C. J.

**DENECKE, C. J.**

The plaintiff received a verdict for approximately $50,000 in this action for personal injuries arising out of a collision between a Dodge van driven by the defendant's decedent and a Volkswagen in which plaintiff was a passenger. The defendant appeals. We affirm.

The collision occurred on a highway in northern California. The Volkswagen turned left across the highway to stop in a turnout on the other side of the highway. The Dodge, which was coming from the opposite direction, rounded a curve and struck the Volkswagen when it was in the Dodge's lane. The complaint charged excessive speed and lack of lookout and control.

The defendant contends that defendant's speed is irrelevant, but that even if it is relevant there was no admissible evidence of any excessive speed by the defendant. These contentions were raised in connection with defendant's motion for a directed verdict, objections to evidence and instructions, and a motion to withdraw the allegation of speed.

■ Defendant contends *Furrer v. Yew Creek Logging Co.,* 206 Or 382, 390, 292 P2d 499 (1956), makes the defendant's speed irrelevant when the collision occurs on the defendant's side of the road. In most side-swipe collisions, which *Furrer* was, that probably is correct. It is obviously not correct when applied to the facts of the present case. *See Carter v. Moberly,* 263 Or 193, 203, 501 P2d 1276 (1972).

Over defendant's objection the following testimony was admitted: The distance traveled using the shortest route from decedent's place of departure to the place of the collision was 24.4 miles; the decedent departed at "about" or "approximately" 5:30; and the investigating officer "estimated" that the collision occurred at 5:50. There also was testimony that the route traveled by the decedent was generally similar to that at the scene of the collision; that is, hilly and curvy.

[ 435 ]

Defendant regards the measurement of the distance as a type of experiment and inadmissible because the conditions of the experiment were not similar to the facts surrounding the collision, citing *Tuite v. Union Pacific Stages,* 204 Or 565, 284 P2d 333 (1955). The only purpose of the evidence was to established distance and thereby the average speed of the decedent. If the shortest distance the decedent could have traveled from his point of departure to the scene of the collision was not identical to the actual route used by decedent, the dissimilarity would only favor the defendant; that is, he would have actually traveled a longer distance in the same time, therefore, traveling at a greater speed.

The question is, was the evidence sufficiently probative to permit the jury to draw the inference that defendant was traveling at an excessive rate of speed at the time of the accident?

The trial court did not permit any witness to testify that based upon the distance traveled and the time elapsed between decedent's departure and the collision that the decedent would have to have averaged so many miles per hour. However, plaintiff's counsel did make that argument to the jury.

The decedent's time of departure and the time of the collision were estimates; however, that does not destroy their relevance but goes to the weight of the evidence. The inference the jury could draw from the evidence suggesting that the decedent traveled at a high average speed is not necessarily proof that the decedent was traveling that speed when he rounded the curve just before the collision; however, the jury could reasonably draw that inference.

We conclude that the trial court did not err in receiving this evidence. We regard this evidence to be in the category discussed in *Carter v. Moberly, supra* (263 Or at 200-202); that is, its admission is within the trial court's discretion.

■ Other evidence of speed admitted over defendant's objection falls in the same category. That evidence was that on a rare stretch of straight road about one and a half miles from the collision location, the decedent passed the witness at a minimum speed of 65 miles per hours and was continuing at that speed when decedent went out of sight.

■ The defendant also assigns as error the trial court's permitting testimony that the posted speed at the place of the collision was 55 miles per hour. Defendant objected on the ground that the 55 miles per hour limit was a conservation measure, not a safety measure. The defendant was not prejudiced by this ruling because the trial court instructed the jury that the 55 miles per hour limit was only for fuel conservation and "is not determinative of what speed was reasonable and prudent."

Before trial the parties took the deposition of the investigating police officer to perpetuate his testimony. Before the deposition was introduced at trial, the parties had the opportunity to make objections and have the trial court rule.

■ The defendant contends the trial court erred in sustaining objections to questions asked the officer on cross-examination. One question to which the trial court sustained an objection was: "Officer, in your official police report on p 2 you marked that one of the causes for the accident was the inattention of driver Thompson, correct?"

As the balance of the deposition shows, the officer did not see the collision nor did Thompson admit to the officer that he was inattentive. That Thompson was inattentive was a conclusion the officer appears to have drawn from the statements made by Thompson and is not competent. The trial court did not err.

■ The trial court's sustaining objections to the other questions of the officer, even if error, could not be

prejudicial error. The officer testified on direct examination to the facts that the defendant sought to elicit on cross-examination. For example: "Q Did you also not mark on the box on page 2 that driver No. 2 [the decedent Landis] was proceeding in a straight direction at the time of the accident in his own lane of traffic?"

On direct examination the officer made a diagram which was a "blowup" of the diagram in his report. It showed that Landis, according to the skid marks, was "proceeding in a straight direction at the time of the accident in his own lane of traffic."

■ The defendant also asserts the trial court erred in striking defendant's affirmative defense that the plaintiff was contributorily negligent in riding with a person she should have known was "influenced by alcohol." We conclude the trial court was correct because there was no evidence that plaintiff's driver was influenced. Viewing the evidence most favorable to defendant, the jury could have found the driver had drunk two bottles of beer during the four-hour period preceding the collision. This is insufficient to prove the driver was influenced. His driving was not such as to provide evidence of being influenced by alcohol.

■ Defendant objects to the giving of instructions on various claims for damages, contending there was no evidence to support such claims. We find evidence supporting a claim for damages for impairment of future earning capacity, future medical expenses and permanent disability.

■ ■ Defendant also contends the trial court erred in refusing to instruct the jury that certain elements of plaintiff's future losses should be reduced to present value. Such an instruction should be given when appropriate; however, the trial court did not err. The requested instruction would have told the jury that certain items of damages must be limited to the "present cash value" of such losses. It then went on to state: " 'Present cash value' is the present sum of

money which, together with the investment returned thereon when invested so as to yield the highest rate of return consistent with reasonable security, will pay the equivalent of lost future benefits at the times, in the amounts and for the period that you find such future benefits have been received."

To instruct the jury without any evidence of the ingredients of the formula could do nothing more than confuse the jury. "A jury could hardly be expected to make such reduction [to present value] without the benefit of advice concerning mortality tables, actuarial tables, and the interest rate." *Osborne v. Bessonette/ Medford Mtrs.,* 265 Or 224 at 229, 508 P2d 185 (1973).

In this case there was no evidence of "the highest rate of return consistent with reasonable security [interest]." In *Meier v. Bray,* 256 Or 613, 620, 475 P2d 587 (1970), we stated: "We conclude that the most satisfactory method to determine the rate of interest to be used is to allow the trier of fact to make a finding of a reasonable rate on the basis of evidence introduced or from evidence which can be judicially noticed or from both."

We have examined the remaining assignments of error made by defendant. We conclude the trial court did not err and no discussion of such assignments is appropriate.

Affirmed.