E. Charleen APPEL, Petitioner,

v.

**SENTRY LIFE INSURANCE COMPANY,**
a Wisconsin corporation; Frank Sandt,
and others whose true names are un-
known, Respondents.

No. 85SC158.

Supreme Court of Colorado,
En Banc.

June 22, 1987.

Fasing and Fasing, P.C., Timothy L. Fas-
ing, Gregory J. Fasing, Denver, for peti-
tioner.

Hall & Evans, Raymond J. Connell, Alan
Epstein, Denver, for respondent Sentry
Life Ins. Co.

White & Steele, P.C., Robert A. Zupkus,
Stephen G. Sparr, Denver, for respondent
Frank Sandt.

Holme Roberts & Owen, R. Craig Ewing,
Lino S. Lipinsky de Orlov, Denver, for ami-
cus curiae Colorado Trial Lawyers Ass'n.

ERICKSON, Justice.

We granted certiorari to review one issue
in *Appel v. Sentry Life Insurance Co.,* 701
P.2d 634 (Colo.App.1985). The court of ap-
peals held that the credibility of an adverse
witness may not be impeached with prior
inconsistent statements uttered in a deposi-
tion at which the opposing party was not
present or represented. We reject the

analysis of the court of appeals on that single issue, but affirm the result reached by the court of appeals. Accordingly, we return the case to the court of appeals with directions to remand to the district court for a new trial in accordance with the directions contained in this opinion and that of the court of appeals.

## I.

On June 14, 1979, Robert Appel met with Frank Sandt, an insurance agent for Sentry Life Insurance Company (Sentry), to obtain a life insurance policy to cover the $10,200 mortgage on his home in the event of his death. After discussing his insurance needs with Sandt, Mr. Appel executed an application for a $10,000 five-year, level term, renewable and convertible term life insurance policy, to be issued by Sentry. Mr. Appel gave Sandt a check for the first month's premium, and Sandt forwarded the signed application to Sentry.

After reviewing the application, Sentry refused to issue the policy because Appel was over the age of sixty. Sentry submitted as an alternative a $5,000 whole life policy, together with an "amendment to application" form, to Sandt. The "amendment to application" form was returned to Sentry with the purported signature of Mr. Appel.

Mr. Appel died on June 15, 1980, and Mrs. Appel submitted a claim to Sentry for $10,000. Sentry denied coverage in that amount, advising Mrs. Appel that her husband had amended his life insurance application and had obtained a $5,000 whole life policy. Mrs. Appel told Sentry that her husband's signature on the "amendment to application" form was forged, and submitted several exemplars of his signature to Sentry for comparison. Sentry examined the handwriting exemplars, but denied coverage. Mrs. Appel then hired two handwriting experts, who concluded that the signature on the amendment to application form was forged. Mrs. Appel communicated the experts' findings to Sentry, but Sen-

try did not change its position. Sentry claimed that its own handwriting expert, Ann Hooten, had examined the questioned signature and concluded that it was genuine.

On May 6, 1981, Appel brought suit against Sentry and Sandt, alleging that her husband's signature was forged by an agent of Sentry. Appel further alleged that the conduct of Sentry and Sandt in connection with the issuance of the policy and the denial of her claim were attended by fraud and wanton and reckless disregard for her rights, feelings and sensibilities, and that she incurred substantial emotional anxiety, humiliation, psychological trauma, and other injuries as a result of the defendants' acts. She alleged claims for civil conspiracy, outrageous conduct, fraud, breach of contract, negligence, and respondeat superior, and sought $100,000 in compensatory damages and $1,000,000 in punitive damages.

At trial, the two handwriting experts retained by Mrs. Appel testified that Mr. Appel's signature on the "amendment to application" form was forged, and that Sandt probably committed the forgery. Mrs. Appel also presented evidence indicating that Sentry failed to exercise proper supervisory control over Sandt and attempted to disguise the problems with the policy.

In addition, during the plaintiff's case-in-chief, counsel for Mrs. Appel called Ann Hooten, Sentry's handwriting expert, as an "adverse witness," and cross-examined her on her qualifications. Plaintiff's counsel did not have the right during the presentation of her case-in-chief to call Sentry's handwriting expert for the sole purpose of impeachment.[1] *See United States v. Morlang*, 531 F.2d 183, 189 (4th Cir.1975) (a party may not call a witness whose testimony is known to be adverse for the sole purpose of impeachment); *United States v. Fay*, 668 F.2d 375 (8th Cir.1981); *Beasley v. United States*, 218 F.2d 366 (D.C.Cir. 1954), *cert. denied*, 349 U.S. 907, 75 S.Ct.

---

1. Appel apparently did not seek to elicit information concerning Hooten's educational and professional background to establish Sentry's

bad faith in relying on an unqualified expert to deny coverage.

584, 99 L.Ed. 1243 (1955). Moreover, plaintiff's counsel did not establish a basis for calling Sentry's expert for cross-examination. *See* C.R.C.P. 43(b) and CRE 611(c). Nevertheless, the trial court permitted the examination, and plaintiff's counsel impeached some of the expert's answers with statements made by her in a deposition from an unrelated case in which none of the present parties were involved. The impeachment was directed at the witness' educational and professional background and her participation in the "psuedo-science" of graphology.[2] Defense counsel objected to the impeachment on the ground that it violated C.R.C.P. 32(a), which provides:

(a) **Use of Depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, *any part or all of a deposition,* so far as admissible under the rules of evidence, *may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof,* in accordance with any of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness.

(Emphasis added.) The trial court overruled the objection, and held that the impeachment was proper under CRE 613.[3] Hooten later testified for Sentry that Mr. Appel's signature was genuine.

The case was submitted to the jury. The jury returned a verdict in favor of Appel, and awarded her $50,000 compensatory and $50,000 punitive damages against Sandt, and $5,000 compensatory and $700,000 punitive damages against Sentry. Sentry and Sandt appealed, and the court of appeals reversed and ordered a new trial because of errors that occurred in the trial. Among the grounds for reversal, the court of appeals held that the district court erred in permitting plaintiff's counsel to impeach Hooten with prior inconsistent statements that she made in a deposition taken in an unrelated case. We granted certiorari solely to review the court of appeals decision on that issue, and now reject its interpretation and analysis.

## II.

■ C.R.C.P. 32(a) impliedly prohibits the use of a deposition against any party who was not present or represented at the taking of the deposition or who did not have reasonable notice thereof. *See Hewitt v. Hutter,* 432 F.Supp. 795, 799 (W.D. Va.1977), *aff'd,* 574 F.2d 1982 (4th Cir. 1978); *George R. Whitten, Jr., Inc. v. State University Construction Fund,* 359 F.Supp. 1037, 1039 (D.Mass.1973), *aff'd* 493 F.2d 177 (1st Cir.1974); 10 *Federal Procedure* § 26:139, at 351 (Law.Co-op.1982). However, where a deposition is not used as substantive evidence, but rather for the limited purpose of impeaching the deponent as a witness, the witness' responses in the deposition may be admitted as prior inconsistent statements even if the opposing party was not present or represented at the

---

2. Graphology is the study of handwriting to analyze the character of the writer. *See* Webster's Third New International Dictionary 990 (1961). According to Hooten, a graphologist can determine personality traits, assess occupational aptitudes, and diagnose certain diseases through an examination of the subject's handwriting. Hooten testified that graphology is considered a "parlor game" in the United States.

3. CRE 613 provides:

(a) **Examining witness concerning prior inconsistent statements for impeachment purposes.** Before a witness may be examined for impeachment by prior inconsistent statement the examiner must call the attention of the witness to the particular time and occasion when, the place where, and the person to whom he made the statement. As a part of

that foundation, the examiner may refer to the witness statement to bring to the attention of the witness any purported prior inconsistent statement. The exact language of the prior statement may be given.

Where the witness denies or does not remember making the prior statement, extrinsic evidence, such as a deposition, proving the utterance of the prior evidence is admissible. However, if a witness admits making the prior statement, additional extrinsic evidence that the prior statement was made is inadmissible.

Denial or failure to remember the prior statement is a prerequisite for the introduction of extrinsic evidence to prove that the prior inconsistent statement was made.

deposition and did not have notice of its taking. *See Lebeck v. William A. Jarvis, Inc.*, 145 F.Supp. 706, 723 n. 55 (E.D.Pa. 1956), *aff'd in part, rev'd in part on other grounds*, 250 F.2d 285 (3d Cir.1957); *Schafer v. National Tea Co.*, 32 Colo.App. 372, 511 P.2d 949 (1973); *Grocers Wholesale Cooperative, Inc. v. Nussberger Trucking Co.*, 192 N.W.2d 753 (Iowa 1971); *Osborne v. Bessonette*, 265 Or. 224, 508 P.2d 185 (1973); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2144, at 455 n. 35 (1970).[4] Professor Moore explained the rule in his authoritative treatise:

> A deposition may be used as substantive or original evidence only against a party who was present or represented at the taking of the deposition or who had due notice thereof. But a deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness, irrespective of whether parties other than the one taking the deposition were present or represented at the taking of the deposition or had due notice thereof.

4A J. Moore, J. Lucas, & D. Epstein, *Moore's Federal Practice* ¶ 32.02[2], at 32–12 to –13 (1984) (footnotes omitted).

■ Rule 32(a)(1), by sanctioning the use of *"any* deposition" for purposes of impeachment, is consistent with the general principle that prior inconsistent statements, if relevant, material, and not collateral, are always admissible under the rules of evidence to discredit the witness and to show that the witness' present testimony is not worthy of belief. *Bishop v. People*, 165 Colo. 423, 428, 439 P.2d 342, 344–45 (1968). Consequently, when a deposition is used for impeachment purposes, it does not differ from evidence of any other prior inconsistent statement, such as signed or unsigned statements or testimony of another person concerning the inconsistent statement. *State v. Atkins*, 494 S.W.2d 317, 320 (Mo.1973).

The basis for broad admissibility of prior inconsistent statements contained in depositions was described in a comprehensive article published shortly after the federal counterpart to the Colorado rule was adopted:

> The first paragraph of the subdivision on the use of depositions provides that "Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness." A strict reading of this provision leads to some difficulties. The normal use of a deposition at the trial, is, of course, as a substitute for the actual presence of the deponent as a witness. If the deponent is present in court or available, his deposition cannot usually be employed as evidence of facts therein stated. When a deponent is present and testifies, however, his deposition may be used to impeach his credibility; but it is used not as a deposition, but as a simple contradictory statement, and thus is admissible even though made in a totally different action (and therefore without notice to the adverse party), or though never filed as required by statute, or, according to some authorities, though never signed by deponent.

Pike & Willis, *The New Federal Deposition—Discovery Procedure: II*, 38 Colum. L.Rev. 1436, 1444–45 (1938) (footnotes omitted).

Sandt asserts, however, that the subordination of paragraph one to subsection (a) of C.R.C.P. 32 implies that a deposition may not be used for impeachment purposes where the opposing party was not present, represented, or notified of the taking of the deposition. We disagree. Sandt's construction of C.R.C.P. 32 is inconsistent with the law prevailing before the adoption of the federal rules, *see The Charles Morgan v. Kouns*, 115 U.S. 69, 5 S.Ct. 1172, 29 L.Ed. 316 (1885); *Charlton v. Kelly*, 156 F. 433, 438 (9th Cir.1907); *Murphy v. Pipkin*, 191 Ala. 111, 67 So. 675 (1914); *Holman's Heirs v. Bank of Norfolk*, 12 Ala. 369, 408–09 (1847), and the committee notes accompanying the adoption of Rule 32(a) do

---

**4.** These authorities construe state or federal rules that are identical in every material respect

to C.R.C.P. 32(a).

not state or imply that the common law principle was changed by the rule. *See* 4 J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 26.01[8] at 26–23 (1986).[5]

Moreover, restricting the use of deposition testimony for impeachment purposes in the manner suggested by Sandt does not further the purpose of the rule. Where deposition testimony is offered as *substantive* evidence in lieu of present testimony, there is a compelling reason to require that the party against whom it is offered has been present to cross-examine the deponent. The deposition represents the only opportunity to subject the hearsay declarant to adversarial testing. C.R.C.P. 32(a) therefore is comparable to CRE 804(b)(1), which permits deposition testimony to be admitted as substantive evidence under an exception to the hearsay rule if the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

However, where the deposition testimony is used only to impeach a witness' testimony with a prior inconsistent statement, and is not admitted as substantive evidence, the presence of the opposing party at the deposition is not material. The deponent is present and testifying and may explain, deny, or clarify the prior statement. Clearly, if the same prior inconsistent statements were made on the same day as the deposition, but outside the hearing of the court reporter, extrinsic evidence would be admissible to prove the statement. Therefore, to restrict the use of deposition testimony for purposes of impeachment by a prior inconsistent statement would grant *greater* protection to the opposing party than would be present if the statement were uttered outside the deposition context. Such a rule would illogically allow wider admissibility to a witness' prior unsworn statements than those same statements would receive if made under oath before a court reporter.

 We therefore hold that C.R.C.P. 32(a)(1) does not prohibit the use of a deposition to impeach the deponent's subsequent testimony by proof of an inconsistent statement, even though the party against whom it was used was not present or represented at the deposition, and did not have reasonable notice of its taking. If Sentry's expert, Ann Hooten, had been properly called as a witness, it would have been proper to permit the plaintiff to impeach Hooten's testimony with prior inconsistent statements in a deposition from an unrelated case. Accordingly, the court of appeals analysis of that issue is rejected, but the result reached by the court of appeals is affirmed. The case is returned to the court of appeals with instructions to remand the case to the district court for a new trial in accordance with the directions contained in this opinion and the opinion of the court of appeals.

**5.** The text of the present-day Fed.R.Civ.Pro. 32(a) was originally set forth in Rule 26(d). In 1970, the discovery rules were reorganized, and the former provisions of Rule 26(d) were placed in Rule 32. *See* 4 J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 26.01[1.--3], at 26–17 (1986).