Argued September 8, affirmed November 22, 1961

# STITES *v.* MORGAN
366 P. 2d 324

*Myron L. Enfield,* Salem, argued the cause for appellant. On the brief were Rhoten, Rhoten & Speerstra, Salem.

*Otto R. Skopil, Jr.,* and *Al J. Laue,* Salem, argued the cause for respondent. On the brief were Williams & Skopil and Al J. Laue.

Before ROSSMAN, J., presiding and PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

This is an action brought under the guest statute (ORS 30.110) to recover damages for personal injuries suffered by plaintiff while riding in an automobile driven by defendant. Plaintiff appeals from a judgment for defendant entered upon defendant's motion for a nonsuit.

The question presented on appeal is whether the trial court erred in refusing to allow the case to go to the jury on the issues of intoxication and gross negligence.

The facts are summarized in plaintiff's brief. Plaintiff, defendant and Jerry Klemmer got into a 1951 Plymouth automobile driven by Fred Yaschuck in the city of Silverton at about 12:30 noon on September 10, 1959. The three who got into the car had gone to an ice cream establishment during the high school lunch hour. Yaschuck offered them a ride back to school. The boys failed to go back to school and "took off" for Monitor. There was a half case of beer

in the car. Yaschuck was drinking beer while driving and offered the rest of the boys a beer. At Monitor they stopped in front of a tavern. Yaschuck went in and bought a six-pack of beer. They then drove to St. Paul, stopped briefly and then drove on to Molalla. After driving around Molalla for a while they proceeded on to Scotts Mills where they stopped, got out, walked around, then returned to the car. Yaschuck resumed driving and drove about one block before he turned the driving over to the defendant. After defendant had driven about a mile the accident occurred. Fred Yaschuck and Jerry Klemmer were fatally injured. The plaintiff was severely and permanently injured.

At the time of the accident defendant was 15 years and three months old. He had driven the Plymouth once before, approximately a week prior to the accident, and then only for a distance of two miles.

The defendant admits that he had four beers after getting into the Plymouth at 12:30 and before the accident which happened at 3:00 p. m. The defendant had his last drink of beer just before the group got out of the car at Scotts Mills. The defendant had drunk beer on only two or three previous occasions. He drank more beer in the two and one-half hours before the accident than he had ever consumed at any one time in his lifetime prior to that date. A blood test, which was taken at 6:30 p. m. on the day of the accident, showed an alcohol content of .09 per cent.

Just before the accident the defendant was driving at approximately 50 miles per hour. The accident occurred upon a marked curve. The degree of curvature of the road was 21 degrees and 50 minutes.

As the defendant was driving someone in the back seat "hollered" and he turned to see what had hap-

pened. When defendant turned his attention back to his driving the automobile was on the left shoulder of the road. The defendant turned the automobile to the right and applied the brakes. The automobile skidded, leaving marks on the paved road for 110 feet. It continued to skid 39 feet along the right shoulder and 52 feet sideways down into a ditch at which point it scraped a power pole, then settled down approximately 20 feet from the pole, having traveled approximately 221 feet after the defendant first set the brakes.

Although no evidence was introduced to establish the results of the defendant's blood test, it appears to have been conceded by defendant's counsel that the test showed an alcoholic content of .09 per cent. The test was taken at 6:30 p. m. and the accident occurred at 3:00 p. m. Plaintiff argues that, since the rate of dissipation of alcohol from the blood can be calculated on the basis of known scientific data, it is possible to establish the approximate concentration of alcohol in defendant's blood at the time of the accident. According to this calculation, plaintiff contends, defendant would have had a blood alcohol concentration of .132 per cent on the basis of the slowest rate of dissipation scientifically recognized (.012 per cent per hour), or as high as .16 per cent if the fastest rate of dissipation scientifically recognized were applied. Plaintiff argues that from this calculation and from the other evidence in the case the jury could have drawn the inference that defendant was intoxicated.

There was not sufficient evidence of defendant's conduct and appearance before or after the accident from which intoxication could be inferred. Unless, therefore, an inference can be drawn upon the basis of a scientific calculation, as argued by plaintiff, the

120

issue of intoxication could not be submitted to the jury.

██ Assuming that such a calculation can be the basis from which a jury could draw the inference of intoxication, plaintiff did not present any evidence of the scientific data from which the jury in this case could draw that inference. There was no evidence either as to the rate of dissipation of alcohol from the blood or as to the alcohol concentration which is necessary to produce intoxication. Assuming, without deciding, that proof of intoxication could be made out by the use of scientific data in the manner proposed by plaintiff, there was no such evidence in the case at bar.[1] Again, assuming, without deciding, that the trial court could take judicial notice of the data relied upon by plaintiff,[2] no request was made to take judicial

---

[1] The data relied upon by plaintiff relating to the rate of dissipation of alcohol from the blood is based upon an average 150 pound person. It is recognized that the rate of dissipation varies with the person's weight and other factors, such as the intake of food. Plaintiff offered no evidence of defendant's weight, of the amount of food consumed by him, or of any other factor which would vary the rate of the dissipation of alcohol from defendant's blood.

[2] Whether such data will be judicially noticed is open to question. It has been urged that the realm of facts judicially noticed should be expanded, 9 Wigmore, Evidence, § 2583 (3d Ed 1940); Morgan, Judicial Notice, 57 Harv L Rev 269 (1944), and that this expansion should extend to scientifically verifiable facts. McCormick, Evidence, § 325 (1954); Davis, Judicial Notice, 55 Colum L Rev 945 (1955); Keefe, Landis & Shaad, Sense and Nonsense About Judicial Notice, 2 Stan L Rev 664, 669-70 (1950). In State v. Williams, 245 Iowa 401, 62 NW2d 241 (1954), apparently the only case in which the question has been presented, the court refused to judicially notice scientific data relating to blood tests for intoxication. There was no statute in Iowa similar to ORS 483.630 (5) making a certain percentage of alcohol in the blood prima facie evidence of intoxication (.15 under the Oregon statute). The court in the Williams case commented on the absence of such a statute. It also noted that, even in states possessing such a statute, the statutory presumption could be rebutted. But see,

notice of it. The failure of a trial court to take judicial notice of facts not brought to its attention ordinarily is not ground for reversal. Stated in another way, an appellate court generally will not take judicial notice of a fact unless it was brought to the attention of the trial court.[9]

■ The scientific data relied upon by plaintiff was not of such a nature as to require the trial court to take notice of it *sua sponte.* Since, as we have already noted, there was not sufficient evidence, aside from the scientific data, from which a reasonable inference of intoxication could be drawn, the trial court correctly refused to submit that issue to the jury.

■ It is next asserted that the trial court erred in not submitting to the jury the issue of gross negligence. We have carefully examined the record and we are of the opinion that the evidence clearly could not sustain a verdict of gross negligence as that term is defined in *Williamson v. McKenna,* 223 Or 366, 354 P2d 56 (1960).

The judgment is affirmed.

---

Comment, 34 B U L Rev 522 (1954), cf. Note, 1 U C L A L Rev 610 (1954).

On the general question of the accuracy and admissibility of scientific tests for intoxication, see Ladd & Gibson, The Medico-Legal Aspects of the Blood Test to Determine Intoxication, 24 Iowa L Rev 191 (1939); Comment, 6 Ark L Rev 181, 186-190 (1952); Note, 5 U Fla L Rev 5, 11-17 (1952).

[9] Mogul Transportation Co. v. Larison, 181 Or 252, 181 P2d 139 (1947); Shapleigh v. Mier, 299 US 468, 57 S Ct 261, 81 L Ed 355, 113 ALR 253 (1937); Goodhall v. Cox, 129 Conn 79, 26 A2d 551 (1942); Knych v. Trustees, 320 Mass 339, 69 NE2d 575 (1946); See also, McCormick, Evidence, § 330 n. 8 (1954); Wigmore, Evidence, § 2568 (3rd Ed 1940); Annotation, 113 ALR 258, 259 (1938); Comment, 42 Mich L Rev 509 (1943); cf., Note, 60 Harv L Rev 299 (1946).

In a colloquy between counsel, attending defendant's motion for a nonsuit, plaintiff's counsel said: "Seems to me that the

Court takes judicial knowledge, if there is some dissipation, they would take judicial knowledge of what the dissipation rate is, and we don't have any information on that, other than general knowledge." This did not constitute a request that the court take judicial notice of the relevant scientific data necessary to draw the inference of intoxication.