PARRIES, *Respondent,*
*v.*
LABATO, et al, *Appellants.*
(No. A7704-04640, CA 11137)

597 P2d 356

John H. Clough, Portland, argued the cause for appellants. With him on the brief were Alfred T. McGill, and McGill, Clarke & Kapranos, Portland.

Howard Hedrick, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, Gillette and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

In this action for the wrongful death of plaintiff's decedent, defendants appeal from a judgment entered on a jury verdict for plaintiff in the amount of $65,000. Defendants make fifteen assignments of error which relate to: the trial court's refusal to grant defendants a directed verdict on the issue of the intoxication of defendant Andrew Kirk Labato, denial of defendants' motion for a continuance due to the absence of one of defendants' key witnesses, submission to the jury of the issue of defendant Andrew J. Labato's liability based on the family purpose doctrine; the admission of defendants' amended answer as an exhibit; and the jury instructions on reducing the value of the decedent's future estate to its present value. We affirm.

On the morning of April 10, 1975, defendant Andrew Kirk Labato picked up Sheri Norton, Shirley Scheck and Doug Sands in his car and drove to David Douglas High School, which they were all attending at the time. All four then left school in the car, drove to a market and purchased three quarts of beer. They proceeded to Shirley Scheck's home, arriving there at 8:45 to 9:00 a.m, where they drank the beer. Kirk Labato drank about one quart, Doug Sands drank perhaps slightly more than one quart and Sheri Norton and Shirley Scheck shared the rest. At about 9:30 or 10:30 a.m., the four left Shirley Scheck's home and drove to a park, where they stayed for approximately forty-five minutes. When they left the park to return to school, Kirk Labato was driving, Sheri Norton occupied the right front passenger seat and Shirley Scheck and Doug Sands were sitting in the back seat. Shortly before 11:42 a.m., the car reached a point where the road narrows under a railroad bridge. In order to avoid the abutment, a car at that point must change direction slightly. Kirk Labato, who was driving at about forty-five miles per hour, kept driving straight and struck the abutment. Sheri Norton died the next day from injuries she received in the collision. Her mother brought this action.

[853]

This case arises under Oregon's guest statute, ORS 30.115, which provides in part:

"No person transported by the owner or operator of a motor vehicle, an aircraft, a watercraft, or other means of conveyance as his guest without payment for such transportation, shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication."[1]

Defendants first assign error to the trial court's refusal to direct the jury to enter a verdict for defendants on the grounds that there was no evidence that Kirk Labato was intoxicated at the time of the accident.[2]

In *Jenson v. Spencer,* 269 Or 411, 525 P2d 153 (1974), the Oregon Supreme Court stated:

"A person is intoxicated within the meaning of the guest statute when he is under the influence of an intoxicating liquor to such an extent as to tend to prevent him from exercising the care and caution which a sober and prudent person would have exercised under the same circumstances." 269 Or at 416, *quoting from Willoughby v. Driscoll,* 168 Or 187, 198, 120 P2d 768, 121 P2d 917 (1942).

*Jenson v. Spencer* examined prior case law and summarized the various fact situations from which a jury may infer that a defendant's ability to drive was impaired by his prior consumption of alcohol. The court stated:

"* * * Such sufficient evidence has taken the form of:

(1) Consumption by the defendant of a substantial quantity of alcohol shortly before an accident,

---

[1] The issue of gross negligence was not submitted to the jury.

[2] Defendants also argue that the verdict was against the weight of the evidence. As the court stated in *Myers v. Cessna Aircraft,* 275 Or 501, 506 n.2, 553 P2d 355 (1976):

" * * * In an action at law this court does not attempt to weigh conflicting evidentiary matters in order to assess the ultimate accuracy of the jury's verdict. So long as that verdict is supported by any substantial, credible evidence, it cannot be overturned on appeal, and the factual issues which arose at trial are foreclosed from any further consideration."

(2) A showing of a lesser amount of alcohol con-
sumed plus evidence of:
(a) prior erratic driving, or
(b) slurring of speech, staggering, blood-shot
eyes, or difficulty controlling movement, or
(c) the occurrence of an accident, the facts of
which suggest that defendant's driving was im-
paired.
(3) Testimony from witnesses that the defendant
was intoxicated and smelled of alcohol." (footnotes
omitted.) 269 Or at 419

In the present case, there was no testimony that Kirk
Labato demonstrated any of the perceptible signs of
intoxication. Doug Sands testified that Kirk Labato
acted in a "normal" fashion and that "[h]e was driving
fine." Shirley Scheck's stipulated testimony was

"that Kirk acted entirely normal; he talked, walked,
and showed no sign whatsoever of any effects from
drinking the beer, or any sign of intoxication in any
way. That when he drove, he didn't speed, swerve, or
drive erractically; he just drove normally along in his
own lane, and * * * Kirk was definitely sober."

Another witness, who had been driving his vehicle
behind Kirk Labato's for approximately one-half mile
before the crash, testified that "[t]here wasn't any-
thing abnormal about the way it was driven."

The facts surrounding the accident, however, "sug-
gest that defendant's driving was impaired." *Jenson v.
Spencer, supra,* 269 Or at 419. The evidence supports
the inference that instead of making the minor adjust-
ment in direction necessary to avoid the abutment,
Kirk Labato allowed his car to leave the pavement and
immediately thereafter struck the abutment.

There was also evidence that at 10:30 a.m. Kirk
Labato had finished drinking at least one quart of
beer. Plaintiff's experts testified that Kirk Labato's
blood alcohol level would, therefore, have peaked at
approximately 11:30 a.m., shortly before the accident.
His blood alcohol level at 3:30 p.m. was measured at
.02 percent. One expert testified concerning the aver-
age dissipation rate of alcohol from the blood and Kirk

Labato's dissipation rate, which could be approximated using the results of a blood alcohol test performed on Kirk Labato at 4:45 p.m. Using the .02 percent figure, the expert witness testified that, depending on the precise dissipation rate, Kirk Labato's blood alcohol level at the time of the accident was between .084 and .1 percent. There was also testimony that Kirk Labato was an occasional drinker and that 80 percent of occasional drinkers show impairment of function with a blood alcohol level of .05 percent.

■ Defendants argue that under *Stites v. Morgan,* 229 Or 116, 366 P2d 324 (1961), the evidence of Kirk Labato's blood alcohol level at the time of the accident is insufficient to create a question of fact for the jury on the issue of intoxication. In *Stites v. Morgan,* the defendant driver drank four beers between 12:30 p.m. and 3:00 p.m., the time of the accident. The accident resulted when, after being distracted by someone in the back seat, defendant lost control of the car on a curve. A blood test administered at 6:30 p.m. showed that defendant's blood alcohol level was .09 percent. There was no evidence of defendant's conduct or appearance around the time of the accident from which the jury could infer that he was intoxicated. The trial court refused to allow the case to go to the jury on the issue of intoxication. Plaintiff argued to the Oregon Supreme Court that by using the rate of dissipation of alcohol from the blood, the defendant's blood alcohol level at the time of the accident would be calculated at between .132 and .16 percent. From that scientific calculation, plaintiff contended, the jury could have drawn the inference that defendant was intoxicated. The court rejected this argument, stating:

> "Assuming that such a calculation can be the basis from which a jury could draw the inference of intoxication, plaintiff did not present any evidence of the scientific data from which the jury in this case could draw that inference. There was no evidence either as to the rate of dissipation of alcohol from the blood or as to the alcohol concentration which is necessary to produce intoxication." 229 Or at 120.

In contrast, in the present case plaintiff presented expert testimony as to both the dissipation rate and the alcohol concentration necessary to produce impairment of function, thus curing the evidentiary deficiencies in *Stites v. Morgan.*[3]

In addition, plaintiff introduced into evidence an extrajudicial admission by Kirk Labato that his ability to control the vehicle was impaired. See discussion below.

■  We conclude that under *Jenson v. Spencer, supra,* the evidence of Kirk Labato's consumption of alcohol before the accident, combined with the inference of impairment available from the circumstances of that accident and Kirk Labato's admission that his driving was impaired, was sufficient to present the jury with the question of fact whether Kirk Labato was intoxicated at the time of the accident.

■  Defendants next assign error to the trial court's denial of their motion for a continuance due to the absence of a witness. Three days before the start of the trial, Shirley Scheck, a prospective defense witness who had been a passenger in the car at the time of the accident, entered a hospital for an emergency operation. Counsel for defendants moved for a continuance, informing the court that the witness would be unavailable for trial and that defendants had not taken the witness' deposition. Plaintiff offered to stipulate to what the witness' testimony would be were she able to testify. Defendants argued that the stipulated testimony would be inadequate since plaintiff planned to impeach the stipulated testimony with evidence of Shirley Scheck's prior inconsisent statements. Plaintiff's counsel informed the court that he planned to introduce evidence of the following prior inconsistent

---

[3] Defendants attempt to raise the issue of the admissibility of the scientific data on dissipation rates as evidence of intoxication. Defendants did not object to this evidence at trial. We do not consider objections to the admissibility of evidence raised for the first time on appeal. *See Wood Int'l Corp. v. Rose,* 271 Or 103, 530 P2d 1245 (1975).

statements made by Shirley Scheck. First, although plaintiff was willing to stipulate that Shirley Scheck would testify that Kirk Labato drank about one quart of beer, plaintiff intended to introduce a police officer's testimony that Shirley Scheck had stated to him that Kirk Labato "consumed over a quart." Second, although the parties would stipulate that Shirley Scheck would testify that she and decedent divided one quart of beer between themselves, plaintiff would introduce the testimony of a police officer that Shirley Scheck told him that she did not like beer and drank very little. Third, although the parties would stipulate that Shirley Scheck would testify that prior to the accident there was "horseplay" going on inside the car, plaintiff intended to introduce a police officer's testimony that Shirley Scheck stated to him that prior to the accident there was no such horseplay in the car. Thus, defendants argued, the witness' credibility would be in issue and, due to the witness' absence, defendants would be unable to rehabilitate the witness. The trial court denied the motion for a continuance, conditional on the parties' ability to stipulate to the testimony Shirley Scheck would give if she were available. The parties subsequently prepared the stipulation which was read to the jury.

ORS 17.050 provides:

"A motion to postpone a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, what diligence has been used to procure it, and the name and residence of the witness or witnesses. The court may also require the moving party to state upon affidavit the evidence which he expects to obtain, and if the adverse party thereupon admit that such evidence would be given, and that it be considered as actually given on the trial, or offered and overruled as improper, the trial shall not be postponed. *However, the court may postpone the trial if, after the adverse party makes the admission described in this section, the moving party can show that such affidavit does not constitute an adequate*

*substitute for the absent evidence.* The court, when it allows the motion, may impose such conditions or terms upon the moving party as may be just. (Emphasis added.)"[4]

This statute indicates that even where the moving party demonstrates that the stipulated testimony "does not constitute an adequate substitute for the absent evidence," the decision whether or not to grant the motion for continuance is within the trial court's discretion. A trial court's denial of such a motion will only be reversed "for a clear abuse of discretion." *Sims v. Sowle,* 238 Or 329, 331, 395 P2d 133 (1964). We find no abuse of discretion here.

Next, defendant Andrew J. Labato, Kirk Labato's father, assigns error to the trial court's submission to the jury of the issue of his liability under the family purpose doctrine. [5] The family purpose doctrine "is based upon the theory that when an automobile is maintained by the owner for the pleasure or convenience of his family, a member of the family who uses it for his own pleasure or convenience with the knowledge and consent of the owner is the agent of the owner and the latter is responsible for his negligence." *Kraxberger v. Rogers,* 231 Or 440, 450, 373 P2d 647 (1962). In the present case, title to the car was in the name of Andrew J. Labato, and the car was being driven by Kirk Labato at the time of the accident.

---

[4] The motion here was not accompanied by affidavit as required by statute. The trial court, noting that the matter had arisen on short notice, stated that the denial of the motion was not due to the lack of an affidavit, although such an affidavit would be required for the file.

[5] Defendant Andrew J. Labato separately assigns error to (1) the trial court's denial of his motion for an involuntary nonsuit; (2) the denial of his motion for a directed verdict; and (3) the trial court's refusal to instruct the jury to return a verdict in his favor. Part of the basis for the motion for an involuntary nonsuit, made after most of the evidence had already been introduced at trial, was an asserted inadequacy in the pleading of the family purpose doctrine. ORS 18.230 does not permit the entrance of a judgment of nonsuit on that basis. Since the remaining issues raised by these assignments of error are identical, we discuss them together. We examine the facts to determine whether there was sufficient evidence from which, if believed, the jury could reach a verdict in favor of the plaintiff. *James v. Carnation Co.,* 278 Or 65, 562 P2d 1192 (1977).

Those facts make a prima facie case of agency. *Kraxberger v. Rogers, supra.* Defendant Andrew J. Labato contends, however, that other evidence introduced at trial overcame the prima facie case as a matter of law. *See Kraxberger v. Rogers, supra.* The essence of the father's argument is that from the proof at trial the only available inference is that the car was Kirk's, that Kirk paid for the gas and maintenance from his allowance and money earned from performing jobs around the house and neighborhood, and Kirk was free to use the car as he pleased. We disagree. The father testified that he kept title in his own name so that he could exercise control over Kirk's driving in case Kirk got in trouble with the car. In *Fisher v. Pippin,* 40 Or App 421, 425, 595 P2d 515, (1979), we stated:

"[T]he owner must have some relation to or control over the vehicle and its use beyond the legal relationship established by the certificate of title. Here, that criterion is met by the father's occasional restrictions on his son's use of the pickup and their attempt to secure insurance coverage under the family policy."

The father's reservation of control over the son's use of the car satisfies the test set out in *Fisher v. Pippin, supra.* We conclude that the trial court did not err in submitting to the jury the issue of Andrew J. Labato's liabilty.

■ Defendants next contend that the trial court erred in admitting defendants' amended answer as an admission. In defendants' amended answer they alleged as a defense:

"That at the time and place mentioned, plaintiff's decedent was herself negligent in entering, remaining, and riding in a vehicle when she knew or should have known that *the driver of the vehicle had consumed alcoholic beverages to the extent that his ability to control, or to safely and prudently drive the vehicle was impaired.*" (Emphasis added.)

This pleading was later superseded by defendants' second amended answer, which omitted the above-

quoted defense. At trial the court, over defendants' objection, allowed plaintiff to introduce the amended answer as an admission. In *Moore v. Drennan,* 269 Or 189, 193, 523 P2d 1250 (1974), the court stated:

"A statement of fact in a party's pleading is an admission that the fact exists as stated. *Marsh v. Davidson,* 265 Or 532, 537, 510 P2d 558, 560 (1973). The admissions in plaintiff's prior pleadings were not consistent with plaintiff's pleadings and testimony at trial. After prior pleadings are received in evidence the pleading party can introduce evidence to explain the allegations in the abandoned pleadings. *Beck v. General Ins. Co.,* 141 Or 446, 455-56, 18 P2d 579, 582 (1933), but the weight to be accorded the former pleadings is a matter for the jury."

The trial court did not err in allowing the amended answer to be introduced as an exhibit.

■ Alternatively, defendants argue that the court erred in refusing to admit all of the pleadings in the case for the purpose of explaining the amended answer. The trial court indicated to defense counsel that admission of all the pleadings in the case would only confuse the jury. The trial court, however, never ruled on the admissibility of all the pleadings. Defense counsel acquiesced in the court's reasoning and adopted the trial court's advice as to how to explain the amended answer. There is thus no ruling for this court to review.

■ Defendants assign error to the following instruction given by the court to the jury:

" * * * The pecuniary loss to decedent's estate is what the decedent would have earned and saved during her normal life expectancy had her life not been terminated, without compensation for the grief and anguish of her surviving relatives. The loss is what the deceased would probably have earned by her intellectual or bodily labor in her business or profession during the residue of her life in which, as representing her net savings, would have gone for the benefit of her estate, taking into consideration her age,

[861]

ability, and disposition to labor, and her habits of living and expenditures.

"Such amount, if any, that you have determined the decedent would have earned and saved and been expected to leave at the end of her natural life must be reduced to its present day value. This reduction is based upon the amount of interest earnings that might reasonably be anticipated on the money during the life expectancy of the decedent.

"This requires that you determine from the evidence what rate of interest would likely be returned, based upon what a prudent investor could be expected to receive during the number of years of decedent's life expectancy."

Defendants also assign error to the trial court's refusal to give one or the other of the following instructions:

"The formula for determining present value is as follows:

$$\frac{A}{(r+1)^n} = P$$

where

A = amount of pecuniary loss to estate

r = rate of interest

n = number of years of life expectancy

P = present value

"If you reach a verdict for the plaintiff and have determined an amount of pecuniary loss to the decedent's estate, under the instructions I have given you, you are directed to fill in that sum on the line indicated on the form of verdict 'Pecuniary loss to decedent's estate.'

"The law requires that this amount, if any, be reduced to present value. This need not concern you as the formula for reducing to present value will be applied by the court."

Defendants do not argue that the instruction given by the court incorrectly stated the law. *See, e.g., Meier v. Bray,* 256 Or 613, 475 P2d 587 (1970); *Carlson v.*

[862]

*Oregon Short Line Ry. Co.,* 21 Or 450, 28 P 497 (1892). Rather, they contend that the trial court erred in not including in the instruction a formula by which the jury could reduce the value of the estate to its present value, or in the alternative, in not taking the calculation away from the jury. *Meier v. Bray, supra,* held that damages for wrongful death should be reduced to present value. This calculation is a function for the trier of fact. The appellate courts of this state have never required that the jury be instructed to use a particular formula in performing the calculation. In fact, Oregon case law suggests that such an instruction could be improper. In *Osborne v. Bessonette/Medford Mtrs.,* 265 Or 224, 508 P2d 185 (1973), the court held that for the jury to perform the calculation there must be evidence concerning mortality tables, actuarial tables, and the interest rate. *See also Barrett v. Landis,* 281 Or 433, 575 P2d 154 (1978). Both parties presented evidence concerning these matters. The court in *Plourd v. Southern Pac. Transp. Co.,* 266 Or 666, 513 P2d 1140 (1973) indicated that the trier of fact is not required to accept any particular expert's contentions as to the various assumptions of interest rates and rates of inflation. Here, the experts differed not only as to the interest rate to use to calculate present value, but also as to whether and to what extent to consider the rate of inflation in calculating present value. Under these circumstances the trial court would have usurped the function of the trier of fact in selecting any particular formula or adopting any specific rate of interest or inflation. We hold that the trial court did not err in giving its instructions on reduction to present value.

Defendants make other assignments of error which do not warrant discussion.

Affirmed.