William F. (Bubba) BLACKMON, Jr.,
Plaintiff-Appellee, and Wife,
Miki Blackmon.

v.

The ESTATE OF Stanley WILSON,
Defendant-Appellant.

and

William BLACKMON, Plaintiff-Appellee,

v.

The ESTATE OF Stanley WILSON,
Defendant-Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Jan. 3, 1986.

Application for Permission to Appeal
Denied by Supreme Court
March 24, 1986.

Thompson, Hendrix, Harvey, Johnson, Blanchard & Adams, Lloyd S. Adams, Jr., Memphis, for the Estate of Stanley Wilson.

A. Russell Larson, Brown & Larson, P.A., Jackson, for William F. (Bubba) Blackmon.

Hill, Boren & Strickland, P.C., R. David Strickland, Jackson, for William J. Blackmon.

O'HEARN, Special Judge.

This is an appeal taken by the administrator ad litem of the estate of Stanley Wilson, the defendant in the trial court. Several months after the automobile accident upon which this cause arose, Wilson died from a cause unrelated to the accident.

Separate actions were filed by plaintiffs William F. (Bubba) Blackmon, Jr., and wife, Miki Blackmon and William J. (Joey) Blackmon. The actions were later joined into a single cause. The jury awarded Bubba Blackmon a verdict of $250,000, granted a judgment of $100,000 in favor of Joey Blackmon, and found for the defendant against Miki Blackmon. Miki Blackmon, who was separated from Bubba at the time of the accident in which plaintiffs were involved and has since obtained a divorce from him, did not appeal.

We reverse.

TESTIMONY PRESENTED AT TRIAL

Bubba Blackmon and Joey Blackmon are cousins. Stanley Wilson and Joey Blackmon lived at the same address. They were not working on April 17, 1981, when Bubba Blackmon came by to see them. The three decided to go to a bar known as Sparky's, south of Savannah, Tennessee "to just dance, to try to meet some girls and drink some." They left for Savannah between 4:00 and 5:00 p.m. in a 1977 Thunderbird. Both plaintiffs testified that nothing alcoholic was drunk during the day until they stopped and bought a pint or half a pint of vodka. Wilson was driving the vehicle with Joey in the front seat and Bubba in the back. The testimony was to the effect that Joey and Stanley Wilson drank a modest amount of vodka and that Bubba "was feeling his liquor." In the parking lot of Sparky's, Bubba was arrested for public drunkenness as a result of which he spent four or more hours in jail. Joey and Wilson followed Bubba to the jail and left upon learning that he would be incarcerated for some time. They returned to Sparky's where Joey testified that each ordered a beer. Joey further testified that while at Sparky's, they found two girls with whom to dance. The girl that danced with Wilson slapped him while on the dance floor because he pinched her. Joey went outside with his companion and sat in the car for some time, leaving Wilson in the establishment. As he was leaving Sparky's Wilson threw a chair at the table where the two girls were sitting. The owner, Sparky, went to the door and told Wilson, "Don't come back in here no more" and "Don't you ever bring anybody in here no more." Joey said to Sparky, "We're leaving," to which Sparky retorted, "Just make sure you don't come back." At this point, Joey and Wilson left for Savannah to pick up Bubba at the jail. Joey testified that at this time, Wilson was "stone cold sober."

At Savannah, Bubba was released from jail in the late evening. The three friends departed to return to Jackson. Bubba testified that Joey and Wilson were "both in real good shape." Both Joey and Bubba testified that upon leaving the jail, Joey Blackmon was driving and Bubba was lying down in the back seat and that shortly thereafter, Bubba went to sleep. Joey stated that on the way he became sleepy and asked Stanley to drive, and Stanley was sober at this time. Soon after Wilson took the wheel, Joey testified that he went

to sleep. Bubba stated that he slept in the back seat rousing only once to ask where they were and that the next thing that he knew, they were skidding toward a utility pole.

Each of the plaintiffs was seriously injured as a result of the accident. Upon investigation at the scene of the accident by the Jackson City Police, Stanley was arrested and charged with driving under the influence of intoxicants and was taken to jail. With the exception of the plaintiffs, there were no witnesses as to the state of intoxication of Wilson while he was driving the car or as to when, during the drive, he took the wheel of the Thunderbird.

The only witness as to the appearance of sobriety of Wilson immediately after the accident was the arresting officer, Larry Long. Officer Long pulled Wilson out of the car but did not remove the other two occupants because he said that "they were injured pretty bad." An ambulance came and took Bubba and Joey to the hospital. Relating to Wilson, Officer Long stated:

A. Being around Mr. Wilson, I could smell an odor of some type of alcoholic beverage coming from his person.

Q. Well, what about his speech. How did he speak?

A. As best I can remember, he had a slurred speech.

Q. And did you reach a conclusion as to whether or not—as to what his condition was regarding intoxication?

A. I came to the conclusion on the scene that Mr. Wilson was under the influence of an intoxicant or drug.

Q. And as a result of that, as has been testified earlier, you placed charges against him for that; did you not?

A. I placed charges upon Mr. Wilson for being DUI.

Q. From that point, where was Mr. Wilson transported?

A. He was transported to the City Police Department.

Q. And was he incarcerated there?

A. Yes.

## ISSUES UPON WHICH THE APPEAL IS BASED

On 17 March 1982, William F. (Bubba) Blackmon and his wife, Miki Blackmon, filed a complaint against the defendant alleging that certain other named defendants who were no longer parties to the cause at the time of the trial, entrusted the 1977 Thunderbird to Stanley E. Wilson "when it was apparent that Mr. Wilson was intoxicated and unfit to operate a vehicle in a safe manner." The complaint also alleged:

At the time and place of this accident the Defendant Stanley Wilson was operating his vehicle in a negligent manner, at an excessive rate of speed and under the influence of alcohol, without keeping a proper lookout ahead and thereby failing to keep his vehicle under proper and reasonable control.

The Defendants violated one or more statutes of the State of Tennessee and ordinances of the City of Jackson, Tennessee which were in full force and effect on the date of this accident and which govern the operation of motor vehicles upon the highways of the State of Tennessee and the streets of the City of Jackson, Madison County, Tennessee, to wit:

'(a) The Defendant was negligent in operating his vehicle in a reckless manner in violation of T.C.A. 55–10–205 AND Section 18–98 of the Jackson City Code.

(b) The Defendant was negligent in operating his vehicle while under the influence of an intoxicant in violation of T.C.A. 55–10–401 and Jackson City Code Section 18–102.

(c) The Defendant (sic) was negligent in entrusting said vehicle to a person who was unfit to drive said vehicle in a safe and proper manner in violation of T.C.A. 55–10–311 and 55–10–312.'

It was alleged that Wilson was driving at an excessive rate of speed and that he lost control of the car. This complaint was signed by William F. (Bubba) Blackmon,

Miki Blackmon and law offices Brown & Holmes, P.A. by William Houston Brown, attorney.

On 16 April 1982 before a responsive pleading had been filed, an amended complaint was filed mentioning nothing about drinking or intoxication, alleging that Wilson was driving at an excessive rate of speed without keeping a proper lookout ahead and thereby failing to keep his vehicle under proper and reasonable control and that he "was negligent in operating his vehicle in a wreckless (sic) manner in violation of T.C.A. 55–10–205 and Sec. 18–98 of the Jackson City Code."

This complaint was not signed by Bubba and Miki Blackmon as was the original, but only by Brown, Holmes and Rich, P.A. and by A. Russell Larson, attorney. On the same day a complaint was filed by William J. Blackmon, plaintiff, against the administrator of the estate of Stanley Wilson signed by T. Robert Hill attorney for Hill, Garrety & Associates, P.C. as attorney for the plaintiff. It made no mention of drinking or intoxication.

When Mr. Adams, the attorney for defendant, tried to cross-examine Bubba Blackmon about the allegations of intoxication in the original complaint, the trial judge ruled that he could not pursue that course of examination. The court stated in part ... "I think counsel has a right to amend pleadings without being bound or stuck with prior pleadings that became amended. So, I'll sustain the objection to that line." After this, Mr. Adams endeavored to offer the original complaint as an exhibit. The court allowed it to be filed as an offer of proof with an instruction that the jury not be allowed to see it.

We think the trial judge was in error. We agree that the plaintiff should not be "bound or stuck" with prior pleading and it should not be conclusive as a judicial admission but we believe the defendant had the right to pursue examination of it and to let the jury see it for the purpose of weighing credibility of Bubba Blackmon. We hold that it was admissible for the purpose of being weighed against other evidence to the contrary.

## SHOULD THE PRIOR INCONSISTENT STATEMENT OF BUBBA BLACKMON HAVE BEEN ALLOWED IN EVIDENCE AS TO JOEY BLACKMON AND SHOULD THE VERDICT RENDERED IN FAVOR OF JOEY BLACKMON BE REVERSED

We think that the prior inconsistent statement made by Bubba Blackmon in his original complaint should have been allowed into evidence with an instruction to the jury that it was admitted only for the purpose of allowing them to test the truthfulness and veracity of the witness (Bubba Blackmon) and to disregard such statement if they believed that it had no effect on Bubba Blackmon's credibility and otherwise to give it such weight as they believed it deserved. A further instruction should have been given to the jury that Joey Blackmon was not a co-maker of the pleading of Bubba Blackmon, that each filed separate pleadings and the prior statement in Bubba Blackmon's pleading was not to be attributed to, or considered as having been said by Joey Blackmon.

However, we believe that the testimony of Bubba Blackmon was supportive and corroborative of the testimony of Joey Blackmon (and vice-versa) in making out his cause of action and of supporting the factual determination by the jury that Wilson was not driving under the influence of alcohol. In doing this, Bubba's testimony supported Joey in establishing that he was not contributorily negligent, and similarly supported his trial testimony without impeachment regarding the prior pleading. It cannot be ignored that both plaintiffs were riding in the same automobile, both had an opportunity to witness various actions by Wilson that may have indicated a state of intoxication, if such existed, and that they are the only living witnesses to the events immediately leading up to the automobile accident. Also, it cannot be ignored that both plaintiffs have an interest in the outcome of this action. There-

fore, Bubba Blackmon's prior inconsistent statement should have gone to the proof as a whole on the issues of whether Wilson was driving while intoxicated and of whether either plaintiff knew or should have known of this fact. Of course, as heretofore stated, Bubba Blackmon would be entitled to explain the variance of the allegations between the original complaint and the amended complaint in his testimony at trial. Similarly, Joey Blackmon would be completely free to explain to the jury that his observations of Wilson's behavior were not in accord with that material factual allegation stated by Bubba Blackmon in the event of a disagreement. But we believe that because of the great importance attached to the establishment in this case of the truthfulness and veracity of the plaintiffs, the jury should have had this evidence brought to their attention.

### THE LAW REGARDING THE ISSUES

In regard to the issue of contributory negligence in this case, the law of Tennessee is as follows:

> If a person voluntarily rides in an automobile with one who is intoxicated and the occupant knows or under the circumstances should have known the intoxicated condition of the driver, he is precluded from recovery from such driver. *Edenton v. McKelvey*, 186 Tenn. 655, 658, 212 S.W.2d 616, 617 (1948). See also *Schwartz v. Johnson*, 152 Tenn. 586, 280 S.W. 32 (1929).

In the instant case, it was not necessary for the defendant to have proved that either plaintiff possessed actual knowledge of the intoxication of Wilson. If an ordinarily prudent man would have regarded the driver as having been intoxicated under like circumstances, the law of Tennessee provides that such knowledge must be imputed to the plaintiff. See *Hicks v. Herbert*, 173 Tenn. 1, 113 S.W.2d 1197 (1938). It follows that any knowledge possessed by Bubba as to the state of sobriety of the driver is also relevant in determining whether Joey should have had similar

knowledge or known that the driver was intoxicated.

■ The general rule on admission of amended pleadings is that admissions contained in an original pleading may be admitted into evidence for the purpose of impeachment. See *Contractor Utility Sales Co., Inc. v. Certain-teed Products Corp.*, 638 F.2d 1061 (C.A.Ill.1982). "Abandoned pleadings may be used in evidence when they contain admissions against interest and may be used to impeach a witness or as admissions against a party's interest." *Jimenez v. Broadway Motors, Inc.*, 445 S.W.2d 315, 317 (Mo. 1969). To be admissible for purposes of impeachment a pleading must be inconsistent with the testimony of the witness. See *Macheca v. Fowler*, 412 S.W.2d 462 (Mo. 1967). Pleadings or other admissions may be admissible to impeach a witness only if he has denied having made a contradictory statement or testified that he does not remember having made such a statement. *U.S. v. Bohle*, 445 F.2d 54 (C.A.Ind.1971), app. after remanded from 475 F.2d 872 (C.A.Ind.1980).

In *Hachick v. Kobelak*, 259 Pa.Super. 13, 393 A.2d 692 (1978), the parents of a deceased automobile passenger filed a complaint in a wrongful death action against a motorist and a tavern for allegedly serving alcohol to the driver of the automobile involved in an accident. There were several paragraphs in the complaint alleging that when the decedent got into defendant's automobile, the defendant was "in a very intoxicated condition," "heavily intoxicated" and that this condition was "clearly apparent." Later, the court granted plaintiff's motion to amend the original complaint. The amended complaint omitted the allegations of intoxication and stated only that defendant was negligent in the operation of his vehicle. At trial, the court refused to allow the defendant to admit the original complaint into evidence to impeach the plaintiff on the stand by his previous contradictory statements concerning the intoxication of the driver. On appeal, the court addressed this refusal by the trial

court to allow in evidence the original complaint as follows:

We must decide the merits of his contention that the trial court erred in refusing to admit into evidence the factual averments contained in the original complaint. In *Tops Apparel Mfg. Co. v. Rothman*, 430 Pa. 583, 244 A.2d 436, (1968), our Supreme Court held that 'admissions of this type, i.e. those contained in pleadings, stipulations, and the like, are usually termed 'judicial admissions' and as such cannot later be contradicted by the party who has made them. See Wigmore, *Evidence*, Sec. 1603(e) (3d ed. 1940).' See also *M. Glosser & Sons v. Micco*, 10 Pa.Cmwlth. 320, 309 A.2d 602 (1973). Moreover, 'although a pleading which has been withdrawn or stricken out or superseded by amendment is out of the case in its capacity as a pleading, and the pleader is no longer concluded by it, statements therein may still be competent as admissions when they are relevant to the issues in connection with which it is sought to introduce them.' *Eston School District v. Cont'l Cas. Co.*, 304 Pa. 67, 72, 155 A. 93; *Braceland v. Hughes*, 184 Pa.Super. 4, 7, 133 A.2d 286, 287 (1957).

In the instant case, appellant sought to introduce into evidence as admissions against appellee's interest statements regarding appellants alleged intoxication contained in the original complaint. The trial court refused without explanation. We conclude that the factual allegations contained in the original complaint constituted admissions against appellee's interest insofar as appellee's decedent admitted that he observed appellant's visibly intoxicated condition but still remained a passenger in appellant's car. Because these factual averments concern the decedent's possible contributory negligence, they were admissions against appellee's interest. Consequently, we hold that the trial court erred in failing to allow appellant to present these facts at trial.

The court reversed and remanded for a new trial.

In *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 642 S.W.2d 151 (Tenn.App.1982), the court addressed the issue of whether a statement in an original answer, later amended, could be admissible as evidence at trial. In their disposition of the case, the court stated in part that:

Upon remand, the defendant will be accorded opportunity to amend its answer. When leave is granted, the original answer will no longer be conclusive, but will remain as an evidentiary admission to be weighed against other evidence to the contrary. *Id.* at 153. See all McCormick on *Evidence*, 2d ed. Sec. 265, p. 634, note 48.

If a pleading or allegation, therein is amended, withdrawn or superseded by a substitute pleading, it ceases to be useful as a conclusive judicial admission, but is admissible in evidence in the case in which filed at the instance of the adversary as an evidentiary admission.... A party's pleading in one case, whether a final one or one later withdrawn, amended or superseded, is freely usable against him as an evidentiary admission in any other litigation. McCormick, *supra*, at 634–35.

Numerous other cases have echoed the proposition that an amended pleading is admissible at trial as an evidentiary admission. See *Office Electronics, Inc. v. Grafic Forms, Inc.* 72 Ill.App.3d 456, 28 Ill.Dec. 594, 390 N.E.2d 953 (1979); *Countess v. Strunk*, 630 S.W.2d 246 (Mo.App.1982); *Oberempt v. Egri*, 401 A.2d 483 (Mich.App. 1980); *Cook v. Beerman*, 202 Neb. 447, 276 N.W.2d 84 (1979); *Yates v. Large*, 284 Or. 217, 585 P.2d 697 (1978); *Drake Insurance Company v. King*, 606 S.W.2d 812 (Tex. 1980); *Hersch v. E.W. Scripps Co.*, 3 Ohio App.3d 367, 445 N.E.2d 670 (1981); *Trans Western Leasing Corp. v. Corrao Construction Company, Inc.*, 98 Nev. 445, 652 P.2d 1181 (1982); *Indiana State Highway Commission v. Vanderbur*, 432 N.E.2d 418 (Ind.App.1982); and *My Sister's Place v. City of Burlington*, 139 Vt. 602, 433 A.2d 275 (1981).

In the case of *Parries v. Labato*, 40 Or.App. 851, 597 P.2d 356 (1979) the court said:

Defendants next contend that the trial court erred in admitting defendants' amended answer as an admission. In defendants' amended answer they alleged as a defense:

'That at the time and place mentioned, plaintiff's decedent was herself negligent in entering, remaining and riding in a vehicle when she knew or should have known that *the driver of the vehicle had consumed alcoholic beverages to the extent that his ability to control, or to safely and prudently drive the vehicle was impaired.* (Emphasis added.)'

This pleading was later superseded by defendants' second amended answer, which omitted the above-quoted defense. At trial the court, over defendants' objection, allowed plaintiff to introduce the amended answer as an admission. In *Moore v. Drennan*, 269 Or. 189, 193, 523 P.2d 1250, 1252–53 (1974), the court stated:

'A statement of fact in a party's pleading is an admission that the fact exists as stated. *Marsh v. Davidson*, 265 Or. 532, 537, 510 P.2d 558, 560 (1973). The admissions in plaintiff's prior pleadings were not consistent with plaintiff's pleadings and testimony at trial. After prior pleadings are received in evidence the pleading party can introduce evidence to explain the allegations in the abandoned pleadings. *Beck v. General Ins. Co.*, 141 Or. 446, 455–56, 18 P.2d 579, 582 (1933), but the weight to be accorded the former pleadings is a matter for the jury.'

The trial court did not err in allowing the amended answer to be introduced as an exhibit.

In addition to the above authorities, it should be noted that both Bubba Blackmon and his attorney signed the original complaint. Traditionally, courts have gone to great lengths to emphasize the importance of an accurate account of the facts and allegations within the pleadings. This tradition is reflected in Rule 11 of the Tennessee Rules of Civil Procedure which states in part that:

The signature of an attorney constitutes a certificate by him that he has read the pleading and to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.

Some jurisdictions recognize a distinction between an allegation and an admission, some holding that an admission is something dispositive of the issue in question, negating the necessity of presentation of proof. We believe that the statement by Bubba that Wilson was drunk was an admissible opinion expressed by a lay witness subject to explanation. Thus, it is not useful to further address that question.

## APPLICATION OF THE LAW TO THE ISSUES

 We agree with the above-cited authorities as to the application of rules of fairness and practice and hold that it was error for His Honor to refuse to permit counsel for the defendant full cross-examination of Bubba Blackmon in regard to the original complaint and to admit the original complaint into evidence.

The issue as to whether the judgment in favor of Joey Blackmon should be reversed because of the error of the trial judge is unusual and perhaps unique. Although, we find decisions involving statements of agents, parties in privity, derivative actions and joint interests in civil cases we have found none in the United States concerning separate plaintiffs in the same action with a set of facts which would aid us in this action, nor has any been called to the attention of the court. We therefore feel that a rule should be established that will be just and fair from an objective and realistic point of view.

Joey Blackmon did not call Bubba Blackmon as a witness. Joey testified before Bubba. The position, theory and testimony of Bubba and Joey were the same. Bubba's testimony supported Joey's and Joey's

testimony supported and corroborated Bubba's, hence Bubba's testimony corroborated Joey's. Joey could not have been examined in any way regarding Bubba's prior pleading unless Bubba, as he did, took the stand and corroborated Joey's testimony, thereby subjecting himself to impeachment of said testimony. Joey, in all fairness, would have been entitled to take the stand to express in every relevant way his disagreement with any aspect of Bubba's testimony. If the jury felt Bubba did not tell the truth on the stand regarding the sobriety of Wilson, or that his original statement that "it was apparent that Mr. Wilson was intoxicated and unfit to operate a vehicle in a safe manner" was true, neither plaintiff would have been entitled to recover. In the cases of *Edenton v. McKelvey, Hicks v. Herbert,* and *Schwartz v. Johnson, supra,* the stated law of Tennessee regarding riding with one who is intoxicated provides— "occupant knows or should have known...." If it believed Bubba knew, as he indicated in his original pleading, that Wilson was intoxicated the jury should have been allowed to consider whether Joey knew "or should have known" the same. Joey was with Wilson longer. He was with him when his dancing partner slapped him, when he threw a chair at the table at which she was sitting and when Sparky admonished him not to come back.

The jury should have been allowed to consider why Bubba amended the pleading, i.e. did he do it merely to rehabilitate his lawsuit or did he do it for another reason. Neither Bubba nor Joey had a lawsuit if the factual elements alleged in Bubba's original pleading had been established, and Bubba could not have presented evidence to the contrary if they had remained and an amendment had not been made. If Bubba had testified in accordance with his original allegations he and Joey would have been adverse witnesses.

The trier of fact may believe all or part or none of the testimony of any witness and even if the testimony is uncontradicted the trial court in its discretion may disbelieve it. *Baum v. Glen Park Properties,* 692 S.W.2d 831 (Mo.App.1985).

Although not mentioned in the transcript, this cause was a *res ipsa loquitur* case. We do not have the instructions of the trial judge to the jury. There was no testimony as to what caused the vehicle to run off the road and strike the utility pole. A cause presented on the theory of *res ipsa loquitur* requires that the defendant under whose control the object was, in this case a motor vehicle, to come forward with an explanation. Stanley Wilson being deceased was not available for such an explanation. The cause of the accident, therefore, the two Blackmons testifying they were asleep, and Stanley Wilson being deceased, could not be explained. This factor makes even more important, a consideration of the proof as a whole, and any valid opportunity to examine the credibility of the witnesses.

■ We hold that where there are two or more plaintiffs relying on the same material facts for a right of recovery arising out of the same transaction or occurrence and one plaintiff in a pleading makes a prior inconsistent material statement of those facts which, if true, may readily defeat the cause of action of both plaintiffs, and subsequently amends or withdraws that statement, the plaintiff who made that prior statement may be cross-examined regarding it for the purpose of allowing the trier of fact to analyze the proof as a whole to determine the truth. The plaintiff being so cross-examined shall be afforded a full opportunity to give any relevant explanation.

■ We further hold that where a prior inconsistent factual statement affecting a material issue has been made by a plaintiff in a prior pleading, subsequently amended or withdrawn, which might materially affect the cause of action of a co-plaintiff and which is not otherwise inadmissible, while not binding on or restrictive of the testimony of either plaintiff, it may be inquired into and is admissible for the purpose of consideration of the entire proof by the trier of fact. Such a statement, after being amended or withdrawn is not

conclusive of the issue and may be refuted or explained by that plaintiff.

The costs of the appeal are assessed against the plaintiffs. The cause is remanded for a new trial and the costs in the trial court will be reserved pending the ultimate disposition of the case.

NEARN and TOMLIN, JJ., concur.